**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Diamond Benefits Life Insurance Company | MDL 93-0972-PHX-RGS |
| | CIV 89-1473-PHX-RGS |
| Charles R. Cohen, Receiver, and Mark D. Tharp, Special Deputy Receiver, of Diamond Benefits Life Insurance Company, | **ORDER** |
| Plaintiffs, | |
| vs. | |
| Adventist Health Systems/West, *et al.*, | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment re Causation and Damages (Doc. #1380) and Defendants' Motion to Dismiss or, in the alternative, to Preclude the Admission of Evidence on the Financial Condition of Diamond Benefits (Doc. #1737). After considering the arguments raised by the parties in their briefing and in oral argument, the Court now issues the following ruling.

**BACKGROUND**

The events that precipitated this lawsuit stem from the actions of Charles Christopher and Wayne Reeder, officers of a company called Resolute Holdings, Inc., ("Resolute") that acquired Diamond Benefits Life Insurance Company ("DBLIC") in June, 1988. Christopher engineered the purchase of DBLIC to occur simultaneously with a reinsurance agreement between DBLIC and the Life Assurance Company of Pennsylvania ("LACOP"). Under the

1  reinsurance agreement, DBLIC would receive several million dollars in exchange for an
2  agreement to assume the obligation to pay the annuities to LACOP's policyholders. When
3  LACOP transferred the funds, however, Christopher and Reeder used them to pay the
4  purchase price for DBLIC itself and to extinguish liens on properties pledged as collateral
5  for the reinsurance transaction. DBLIC, through its receiver ("Plaintiffs"), brought several
6  actions seeking to recover its stolen assets and has since resolved its claims against
7  Christopher, Reeder, and other culpable parties.

8  Plaintiffs filed suit against its former parent corporations, Joint Health Ventures and
9  Adventist Health System/West (collectively "Defendants"). Plaintiffs' Fourth Amended
10 Complaint asserted several claims against Defendants consisting of fraud, breach of fiduciary
11 duties, and aiding and abetting fraud and breach of fiduciary duties. The gist of these
12 allegations is that Defendants acted dishonestly and in bad faith in arranging the sale of
13 DBLIC; that they, along with Resolute, lied to state regulators to gain approval for the sale
14 and the reinsurance agreement; and that they ignored indications that would have signaled
15 Christopher's fraudulent intentions. In addition, Plaintiffs seek to hold Defendants liable,
16 under theories of conversion and fraudulent conveyance, for the receipt of the portion of
17 funds diverted by Christopher to pay the purchase price for DBLIC.

18 On September 11, 2002, the Court granted summary judgment to Defendants on
19 Plaintiffs' claim that Defendants committed fraud by making misrepresentations in DBLIC's
20 1987 Annual Statement and in the "Form As" filed with Arizona and California, as well as,
21 by omission. The Court also granted summary judgment to Defendants on Plaintiffs' claims
22 of breach of fiduciary duties, aiding and abetting fraud and breach of fiduciary duties,
23 conversion and fraudulent conveyance finding that facts known to Defendants were not
24 sufficient to have prompted a further investigation into Resolute and its plans for DBLIC or
25 to negate their good-faith defense. Plaintiffs subsequently appealed the Court's ruling.

In a decision dated July 15, 2004, the United States Court of Appeals for the Ninth Circuit reversed and remanded this action for further proceedings concerning some of Plaintiffs' claims against Defendants.[1]  The Ninth Circuit stated, in pertinent part:

> Several of [Plaintiffs'] claims against [Defendants] turn on whether these parent corporations had sufficient knowledge before transferring [DBLIC] to Resolute that they should have reasonably suspected that Resolute was planning to loot [DBLIC] once it acquired control.  Such reasonable suspicion would trigger a fiduciary duty to either refuse to transfer [DBLIC], or at least to further investigate Resolute.  Such reasonable suspicion would also deprive the parent corporations of the defense to [Plaintiffs'] claims of conversion and fraudulent conveyance that they took the purchase price in good faith.
>
> \*   \*   \*
>
> We ... hold that [Plaintiffs have] shown sufficiently suspicious circumstances to create genuine issues of material fact as to what [Defendants] knew before transferring [DBLIC] to Resolute, as to whether these facts should have given rise to a reasonable suspicion that Resolute would loot [DBLIC], and as to whether [Defendants] took the purchase price in good faith and thereby became bona fide holders for value.  We therefore REVERSE the grant of summary judgment on the following claims against [Defendants]:  Breach of Fiduciary Duty; Aiding and Abetting Fraud; Aiding and Abetting Breach of Fiduciary Duty.  We likewise REVERSE the grant of summary judgment on the following claims against [Defendants]: Conversion; Receipt of Fraudulent Conveyance.  To the extent that our holdings conflict with the district court's orders denying numerous motions by the parties as moot, those mootness-based orders are VACATED.

In accordance with the Ninth Circuit's decision, the parties agreed to revive two motions that were previously filed with the Court – (1) Defendants' Motion for Summary Judgment re Causation and Damages and (2) Defendants' Motion to Dismiss or, in the alternative, to Preclude the Admission of Evidence on the Financial Condition of Diamond Benefits.

---

[1] The Ninth Circuit affirmed this Court's grant of summary judgment to Defendants on Plaintiffs' claim of fraud and also affirmed this Court's grant of summary judgment to Defendants HomeFed Bank and Continental Illinois National Bank & Trust Co. of Chicago, which for purposes of simplification have not been addressed in this decision.

## DISCUSSION

**A.    Defendants' Motion for Summary Judgment re Causation and Damages**

Defendants move for summary judgment on Counts One (fraud), Two (aiding and abetting fraud), Three (breach of fiduciary duty), and Four (aiding and abetting breaches of fiduciary duties) of Plaintiffs' Fourth Amended Complaint. Defendants argue that with respect to each of these counts, Plaintiffs cannot establish the requisite causation and measure of damages. The Ninth Circuit affirmed this Court's granting of summary judgment to Defendants on Plaintiffs' fraud claim finding Defendants "did not make any representations at all in [DBLIC's] 1987 Annual Statement. The allegedly false statements in the Form As are either non-actionable statements of intent or opinion, or were withdrawn. Moreover, in these circumstances, [Defendants] did not have a duty to speak, so it did not commit fraud by omission." Accordingly, Plaintiffs' fraud claim is no longer a part of this action.

Proof of damages caused by a defendant's conduct is an essential element of a plaintiff's claim. As the United States Supreme Court has observed, "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendants, citing Thompson v. Better-Bilt Aluminum Products Co., 832 P.2d 203, 207 (Ariz. 1992), argue that proof of damages requires both proof of but-for causation and proof that Defendants' actions are the legal cause of Plaintiffs' injuries. Defendants claim that the factual record simply does not link the alleged wrongs to the amount of damages claimed. Defendants assert that they are not a guarantor of profitability and cannot be blindly rendered responsible for each dollar of revenue not obtained or each dollar spent at DBLIC. Defendants also state that Plaintiffs continue to ignore the acts of Christopher and others at Resolute as an intervening and superseding cause.

In response, Plaintiffs state that Defendants engaged in conduct from December 1987 until the imposition of receivership in December 1988, which was designed to, and did,

disguise the insolvency of DBLIC, thereby forestalling regulatory intervention, and compounding the liabilities assumed by DBLIC. Plaintiffs assert that as a direct result of Defendants' efforts in disguising the insolvency, DBLIC suffered damages, including those associated with being in receivership. Plaintiffs respond to Defendants' arguments with several illustrations of damages and Defendants' causal connection to those damages as supported by deposition testimony and related discovery. Among their illustrations, Plaintiffs contend:

> (1) As a direct and consequential result of Defendants' mistreatment and disregard of the interests of the policyholders of DBLIC, the business spiraled downward and with it came substantial losses.
>
> (2) Defendants caused DBLIC to assume the business on June 14, 1988, without any regard as to whether it was a good business decision for DBLIC and solely because it was desired by Resolute and its principals. Resolute, Christopher, and Reeder wanted millions in cash and Defendants made it possible by indiscriminately and irresponsibly taking on liabilities, contrary to any legitimate business justification for DBLIC, and in the face of clearly suspicious circumstances that mandated investigation. The result of Defendants' indiscretion was the assumption of $30 million of liabilities and the looting of the matching assets.
>
> (3) Defendants had clear knowledge of numerous misrepresentations made in connection with the Form A submissions to Arizona and California. Defendants knew that they had received stolen funds in violation of the law. The abuse and looting of DBLIC would have ceased immediately if Defendants had acted to expose the misrepresentations, breaches, and illegal activities.
>
> (4) Defendants' action and inaction are the direct and proximate result of the losses associated with the third party administrator ("TPA") breaches that are reflected on the receiver's liquidated balance sheet. When DBLIC was placed into receivership, the capacity to correct the accounting imbalance was completely lost and the business incentives for the TPA to conform were also lost. What was left was an insolvent insurance company besieged by policyholder claims, record keeping chaos, and new management.
>
> (5) Defendants are the reason for the receivership, and the costs of receivership would not have occurred if the receiver was not appointed. The costs of administration and liquidation are costs which erode assets. This is the position that Defendants placed DBLIC in and they must answer for those abuses.
>
> (6) Had DBLIC not been looted of the $18 million in cash by Defendants, and those they aided and abetted, and deprived of another $11 million owed to it by LACOP, DBLIC would now be in the position to pay all of its creditor claims. The losses are clear. The causal link to Defendants is irrefutable.

After citing to numerous illustrations, Plaintiffs argue that if they can articulate a plausible legal theory for recovery and demonstrate a credible factual basis for the claim of damages, the matter should go to the Court to determine specific allocations.

The Court finds that Plaintiffs have asserted sufficient facts to create a disputed issue regarding causation and damages. Accordingly, Defendants' Motion for Summary Judgment re Causation and Damages will be denied.

**B.  Defendants' Motion to Dismiss or, in the alternative, to Preclude the Admission of Evidence on the Financial Condition of Diamond Benefits**

On September 27, 1999, Defendants filed a Motion to Dismiss, or in the alternative, to Preclude the Admission of Evidence on the Financial Condition of Diamond Benefits. In their Motion, Defendants state that in anticipation of the designation and depositions of expert witnesses back in 1997-1998, they sought the production of documents in Plaintiffs' possession concerning the operation and financial condition of DBLIC, both before and after its sale. Defendants contend that this information relates to a variety of issues raised by Plaintiffs, including the solvency of DBLIC on the date of the alleged fraudulent conveyances and the amount of damages resulting from the alleged conduct. Defendants assert that despite their explicit requests and Magistrate Judge Sitver's Order on Motion to Compel[2], little useful information was produced by Plaintiffs.

Specifically, Defendants complain that after the service of all defense expert reports, Plaintiffs finally produced DBLIC's general ledger for 1988, an alleged essential piece of information previously withheld. Following Plaintiffs' production of the general ledger and

---

[2] Magistrate Judge Sitver's Order on Motion to Compel stated in pertinent part:

Defendants' motion to compel [1240-1] is granted. The plaintiff/receiver shall produce the following documents to the defendants.
\*   \*   \*
3. RE: SOLVENCY OF COMPANY IN DECEMBER '87 AND JUNE '88: The receiver shall produce those documents which contain information to allow a financial expert to analyze the figures. No underlying documents are needed. The Receiver need not reconstruct the history of each claim.

- 6 -

1 after all defense experts had been deposed, Plaintiffs then produced over 2,500 pages of
2 detailed financial information – consisting of journal entries supporting the general ledger
3 – which Defendants assert had never been made available.

4 Defendants argue for dismissal of this case pursuant to Rule 37 of the Federal Rules
5 of Civil Procedure and the Court's inherent powers contending that there is simply no
6 sanction short of dismissal that will fully mitigate the prejudice they have suffered.  In the
7 alternative, Defendants argue that if the Court elects not to impose the sanction of dismissal,
8 it should nevertheless impose the lesser sanction of precluding the evidence withheld and any
9 opinions or testimony derived from that evidence.

10 In response, Plaintiffs contend that they have consistently provided Defendants, both
11 voluntarily and upon request, with all potentially or conceivably relevant documents on a
12 timely basis.  Plaintiffs state that even though documents related to DBLIC would amount
13 to over 4 million pages of material, and even though most of those documents are general
14 business records of DBLIC, Plaintiffs have, nonetheless, made a large number of those
15 documents available for copying or inspection.

16 In addition, Plaintiffs have also produced specific portions of the books and records
17 of DBLIC upon request or when it became apparent that certain documents were, in fact,
18 relevant to this case.  Plaintiffs assert that this procedure for disclosing documents was not
19 designed to prejudice Defendants or to prevent them from obtaining what they believe to be
20 relevant material.  Instead, the procedure provided a practical solution to what could have
21 been a highly inefficient and costly document production of irrelevant material.  Plaintiffs
22 state that up until the filing of Defendants' Rule 37 Motion to Dismiss, Defendants have not
23 objected to the manner in which documents were provided to them or the completeness of
24 those productions.

25 Plaintiffs also state that they complied with Magistrate Judge Sitver's Order on
26 Defendants' Motion to Compel, by producing information that included a list of documents
27 – all of which had been previously produced – that were specifically relied upon in
28 calculating DBLIC's insolvency.  Plaintiffs further contend that the 1988 general ledger was

1 first requested by Defendants during the March 4, 1999 deposition of Mark D. Tharp. After
2 producing boxes of additional documents responsive to Defendants' requests, Plaintiffs
3 informed Defendants that they were unable to locate the 1988 general ledger. Two months
4 later, Plaintiffs located the 1988 general ledger covering the months of July through
5 December and produced copies of it to Defendants. This production occurred well before
6 Defendants' expert witnesses were deposed and before their expert reports were due.
7 Plaintiffs state that less than a month later, they located the 1988 general ledger covering the
8 months of January through June and produced copies of it to Defendants. This production
9 occurred before any defense expert was deposed.

10 Plaintiffs allege that the 90 days it took to produce the full 1988 general ledger was
11 not due to any evil scheme, but was instead the product of the unintentional misplacement
12 of the records. As Mr. Tharp explained in his deposition, the general ledger had gotten lost
13 in the process of moving the books and records of DBLIC from the former Special Deputy
14 Receiver Lawrence Warfield's office to Mr. Tharp's office during 1998. Plaintiffs claim that
15 they were never informed at any point prior to July of 1999 that the lack of the 1988 general
16 ledger was a problem for Defendants' expert witnesses. Once it became apparent that
17 Defendants' expert witnesses were placing an emphasis on the general ledger, Plaintiffs state
18 that they then elected to voluntarily produce additional documentation underlying the general
19 ledger – the journal entries.

20 Federal courts have the authority to sanction litigants for discovery abuses both under
21 the Federal Rules of Civil Procedure and pursuant to the court's inherent power to prevent
22 abuse of the judicial process. See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); In
23 re Matter of Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986). Specifically, where a party fails
24 to comply with a discovery order, Rule 37 of the Federal Rule of Civil Procedure authorizes
25 the court to impose a range of sanctions, including, taking facts as established, precluding
26 evidence, and dismissing the action or entering default judgment. See Fed.R.Civ.P. 37(b)(2).
27 Pursuant to Rule 37, the standard for sanctionable misconduct is generally one of
28 objective reasonableness. See Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir. 1978).

1  In contrast, a showing of bad faith is required to impose sanctions under the Court's inherent
2  power. See Chambers, 501 U.S. at 50; Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th
3  Cir. 1989). Furthermore, "when there is bad-faith conduct in the course of litigation that
4  could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules
5  rather than [its] inherent power." Chambers, 501 U.S. at 50. In either case, the decision to
6  impose sanctions lies within the sound discretion of the district court. See Lasar v. Ford
7  Motor Co., 399 F.3d 1101, 1109 (9th Cir. 2005)(reviewing sanctions imposed under the
8  court's inherent power); Payne v. Exxon Corp., 121 F.3d 503, 510 (9th Cir. 1997)(upholding
9  sanctions imposed under the Federal Rules of Civil Procedure).

10  As an initial matter, it should be noted that among the sanctions a court may elect to
11  impose in applying Rule 37, preclusion of evidence is among the most severe; indeed, under
12  certain circumstances, the imposition of preclusive sanctions may be tantamount to dismissal
13  of a plaintiff's claims or entry of default judgment against a defendant. See United States v.
14  Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1369 (9th Cir. 1980). Under those
15  circumstances, mere negligent conduct is insufficient to impose the severe penalty of
16  exclusionary sanctions, and a showing of bad faith is required. See id.

17  The purported violations of Rule 37 that Defendants have identified in the instant
18  motion fall far short of meeting this standard. In fact, even if the Court were to assume that
19  a showing of bad faith is not required to impose the type of sanctions that Defendants seek,
20  there can be no doubt that Plaintiffs made a reasonable effort to respond to Magistrate Judge
21  Sitver's Order to compel, producing responsive documents and supplementing those
22  disclosures when they were requested to do so by Defendants.

23  Accordingly, the Court will deny Defendants' Motion to Dismiss or, in the alternative,
24  to Preclude the Admission of Evidence on the Financial Condition of Diamond Benefits
25  pursuant to Rule 37 of the Federal Rule of Civil Procedure.

26  **CONCLUSION**

27  IT IS ORDERED that Defendants' Motion for Summary Judgment re Causation and
28  Damages (Doc. #1380) is DENIED;

1    IT IS FURTHER ORDERED that Defendants' Motion to Dismiss or, in the
2 alternative, to Preclude the Admission of Evidence on the Financial Condition of Diamond
3 Benefits (Doc. #1737) is DENIED.

4    DATED this 10th day of March, 2006.

_____
Roger G. Strand
Senior United States District Judge

- 10 -